UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Gregory Penn,                         :
        Plaintiff,                    :
                                      :
    v.                                :      File No. 1:05-CV-308
                                      :
Corrections Corporation              :
of America, Randy Eckman,            :
Mr. Fox, Unknown Chief of            :
Security, Mr. Nobles,                :
Unknown Chaplain, Unknown            :
Medical Staff, and Steven            :
Gold,                                :
        Defendants.                   :

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 8 and 9)

Plaintiff Gregory Penn, a Vermont inmate proceeding
*pro se* and *in forma pauperis*, brings this civil rights
action pursuant to 42 U.S.C. § 1983.  In his complaint,
Penn claims that after he was transferred from Vermont to
a private correctional facility in Kentucky, he was
placed in solitary confinement without justification,
abused by prison personnel, and denied the ability to
observe his religion.  The defendants have filed a motion
to dismiss in which they argue that venue lies in the
Eastern District of Kentucky.  The defendants further
assert that the case should be dismissed, rather than
transferred, because a transfer to Kentucky would result
in summary dismissal on grounds of (1) failure to exhaust

administrative remedies and (2) expiration of the statute
of limitations.   The defendants also argue that the
claims against defendant Steven Gold in his individual
and official capacities should be dismissed.   For the
reasons set forth below, I recommend that the claims
against Gold be DISMISSED, and that this case be
TRANSFERRED to the United States District Court for the
Eastern District of Kentucky.

<u>Factual Background</u>

For the purposes of the pending motion to dismiss,
the factual allegations in the complaint will be accepted
as true.   Penn is a Vermont inmate who was transferred by
the Vermont Department of Corrections to Lee Adjustment
Facility ("LAF"), a private prison facility in
Beattyville, Kentucky.   The facility is owned and
operated by defendant Corrections Corporation of America
("CCA").

Penn arrived at LAF on February 7, 2004.   When asked
his religious preference, Penn informed prison personnel
that he was Rastafarian and required a vegetarian diet.
When Penn was told that there was no diet at LAF that
would meet his needs, another inmate suggested that he

speak with the prison Chaplain.  Penn did so, and
subsequently proceeded to the prison law library where he
was met by two correctional officers.  The officers
escorted Penn to the office of the Chief of Security, who
inquired about the content of Penn's conversation with
the Chaplain.  When Penn told the Chief of Security that
he had discussed religious matters with the Chaplain, the
Chief allegedly ordered that Penn be handcuffed and taken
to the segregation unit.

When Penn arrived at the segregation unit,
Segregation Supervisor Fox ordered that his feet be
tethered.  Once this had been done, several officers took
Penn to the floor while one officer shaved his head and
facial hair.  Penn asked why he was being shaved, but was
provided no explanation.  Shaving in this manner occurred
again on February 11, 13 and 23, 2004.[1]  During one of
these episodes, defendant Fox punched Penn in the
testicles.  During another, he was choked, and during a
third an officer stood on Penn's feet.  In addition to
physical abuse and religious rights violations, Penn

---

[1]  Although the complaint specifies only these three
additional dates, Penn's attachments to the complaint
allege that this conduct continued in March, 2004.

claims that he received inadequate medical care at LAF. He claims that the cuffs on his hands and feet would cut into him, but that medical staff ignored his requests for treatment.

To protest his treatment, Penn went on a hunger strike for 19 days.  He claims that he was denied proper care and was placed in a cell with no proper sheets or blankets, leaving him subject to cold winter temperatures.  Penn specifically accuses defendants Fox, Nobles, and other unnamed correctional officers of wilfully ignoring his condition.

Penn also accuses Fox, Nobles and others of refusing his requests for paper and a pen.  The officers allegedly told Penn that he had to buy these items, although they knew that Penn was indigent and that his belongings were still *en route* from Vermont.  When Penn was eventually able to afford a pen, paper and a stamp, he wrote to a friend who alerted the press in Vermont about Penn's treatment.  After this information became public, "the Vermont Dept. of Corrections . . . conspired with the staff at Lee Adjustment Facility in Kentucky, and had the plaintiffs [sic] points raised high enough" that he could

4

be transferred to a maximum security CCA facility in
Arizona.  (Paper 3-6 at 3).

Prior to his transfer to Arizona, Penn allegedly
filed two grievances about his treatment, but never
received a response.  He also tried to appeal to the
Warden at LAF, but was told that CCA is a private
company, and as such does not have to abide by the
Constitution.  Penn subsequently requested access to the
law library, and claims that his efforts to conduct legal
research and file a lawsuit contributed to the
defendants' decision to transfer him to Arizona.

When Penn arrived in Arizona, he was first placed in
segregation at the request of officials in Kentucky.
Arizona officials subsequently saw no reason for him to
be in segregation, and released him to the general prison
population.  Although Penn was allowed access to the law
library in Arizona, it had no Vermont-specific materials,
and his access was limited to one hour per week.  Feeling
that he could not pursue his civil claim from Arizona, he
sent his paperwork to a friend at LAF.  That paperwork
never arrived, and Penn concludes from this fact that the
defendants conspired to block him from bringing suit.  In

a filing subsequent to the complaint, Penn has alleged that he did make an effort to file suit from Arizona. (Paper 16-1 at 3).

For relief, Penn seeks money damages and a permanent injunction barring the defendants from ever cutting a Rastafarian's hair.  When Penn initiated this action on November 28, 2005, he was incarcerated in Tennessee.

Discussion

I.  Motion to Dismiss Standard

A motion to dismiss should only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Weixel v. Board of Educ. of New York, 287 F.3d 138, 145 (2d Cir. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  When deciding a motion to dismiss, courts must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the nonmovant's favor.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)).  When a plaintiff is proceeding pro se, courts must construe the complaint liberally.  See Haines v.

6

<u>Kerner</u>, 404 U.S. 519, 520 (1972); <u>see also</u> <u>Boddie v.</u>
<u>Schnieder</u>, 105 F.3d 857, 860 (2d Cir. 1997).

II.  <u>Claims Against Steven Gold</u>

The sole Vermont defendant in this case is Steven
Gold, former Commissioner of the Vermont Department of
Corrections.  Although the complaint does not make any
specific claims against Gold, Penn's subsequent filings
make clear that he seeks to hold Gold liable for
transferring him to Kentucky and Arizona.  The defendants
argue that the claims against Gold in his official
capacity are barred by the Eleventh Amendment, while the
claims against him in his individual capacity are barred
for lack of personal involvement.

A.  Official Capacity Claims

Under the doctrine of sovereign immunity, the
Eleventh Amendment to the United States Constitution bars
suits by private citizens against a state or its agencies
in federal court unless the state has waived its immunity
or Congress has properly abrogated that immunity.  <u>See</u>
<u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89,
98-99 (1984); <u>Seminole Tribe v. Florida</u>, 517 U.S. 44, 55
(1996).  The protection of the Eleventh Amendment also

extends to suits for monetary damages against state officers sued in their official capacities. See Brandon v. Holt, 469 U.S. 464, 471 (1985). Moreover, the Supreme Court has held that, just as states and state agencies are not "persons" under § 1983, state officers acting in their official capacities are not "persons" within the meaning of the statute since they assume the identity of the government that employs them. See Hafer v. Melo, 502 U.S. 21, 27 (1991).

With respect to this case, it is clear that neither Vermont nor Congress has waived the sovereign immunity that protects Gold from a damages action brought against him in his official capacity. There is no indication in 42 U.S.C. § 1983 that Congress intended to abrogate state sovereign immunity, and the Supreme Court has specifically held that Congress did not intend to override well-established immunities such as state sovereign immunity when it enacted § 1983. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 67 (1989). It is equally clear that Vermont has not waived its sovereign immunity under § 1983. See 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment

immunity for all claims not explicitly waived).
Therefore, the damages claims against Gold in his
official capacity must be DISMISSED.

Penn also seeks prospective injunctive relief in the
form of an order barring officials from cutting the hair
of Rastafarians.  Official capacity claims seeking
prospective injunctive relief are not treated as actions
against the state.  See Kentucky v. Graham, 473 U.S. 159,
167 n.14 (1985); Ex parte Young, 209 U.S. 123, 155-56
(1908);  In re Dairy Mart Convenience Stores, Inc., 411
F.3d 367, 372 (2d Cir. 2005) ("Whether a litigant's claim
falls under the Ex parte Young exception to the Eleventh
Amendment's bar against suing a state is a
'straightforward inquiry' that asks 'whether [the]
complaint alleges an ongoing violation of federal law and
seeks relief properly characterized as prospective.'")
(quoting Verizon Md., Inc. v. Public Serv. Comm'n of Md.,
535 U.S. 635, 645 (2002)).  In this case, however, Penn
has not alleged an ongoing violation by Gold or the
Department of Corrections.  Verizon Md., Inc., 535 U.S.
at 634.  In fact, Penn's complaint implies that the
actions of the CCA officers were inconsistent with the

policies and practices in the State of Vermont: "I know that it is not anywhere in the contract between VT. and Kentucky that they are allowed to treat inmates housed there any different from the way they treat us in Vermont." (Paper 3-3 at 1). Therefore, if any meaningful injunction is to be imposed, that injunction must be imposed against CCA and its employees.

There is also a question of Penn's ability to bring an injunctive relief claim on behalf of other Rastafarians. Penn is not bringing this case as a class action. Moreover, he "has no inherent standing to sue on behalf of his fellow prisoners." Nilsson v. Coughlin, 670 F. Supp. 1186, 1190 (S.D.N.Y. 1987) (citing Weaver v. Wilcox, 650 F.2d 22, 27 (3d Cir. 1981)). With respect to his own claims, the Second Circuit has held that an inmate's request for injunctive relief generally becomes moot when, as in this case, the inmate is discharged or transferred to a different correctional institution. See Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976); see also Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983). Consequently, his claim for injunctive relief against former Commissioner Gold in his official capacity

10

should be DISMISSED.

    B.  Individual Capacity Claims

    As noted above, Penn accuses the Vermont Department of Corrections of coordinating his transfers to Kentucky and Arizona.  With respect to Gold specifically, Penn explains in his opposition to the motion to dismiss that "[t]he Commissioner of the Vermont D.O.C. is the one [with the authority to designate] the location of Plaintiff [sic] confinement . . . .  So therefore the <u>Commissioner</u> <u>knew</u> about the alleged constitutional deprivation that the Plaintiff suffered.  The Commissioner failed to remedy the wrong." (Paper 16-1 at 1) (emphasis in original).

    "It is well settled in this Circuit that personal involvement of a defendant in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994).  While "*respondeat superior* cannot form the basis for a § 1983 claim," <u>Hemmings v. Gorczyk</u>, 134 F.3d 104, 108 (2d Cir. 1998), the personal involvement of a supervisory defendant in a § 1983 claim may be shown by evidence that: (1) the defendant participated directly in

11

the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.  See Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).  Mere "linkage in the prison chain of command" is insufficient to implicate a state commissioner of corrections in a § 1983 claim.  See Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985).

Here, Penn has failed to allege sufficient personal involvement by Gold.  His claim is that because Gold was the top official at the Department of Corrections, knowledge of the alleged mistreatment should be imputed to him.  Imputed knowledge is not one of the bases for supervisor liability set forth above.  There is no

12

allegation that Gold had direct knowledge of Penn's treatment while it was occurring, or that Gold was responsible for supervising the CCA officers who inflicted the alleged abuse.  Furthermore, Penn has himself stated that Vermont policy does not permit such abuse.  With respect to Gold's actions after allegedly becoming aware of Penn's treatment, the only claim is that Gold was responsible for transferring Penn out of Kentucky.  Even assuming that Gold was personally involved in the decision to transfer Penn out of Kentucky, this transfer would have been a remedial measure.  Remedial conduct is not a basis for liability.

Penn also claims that since Gold was the only person with authority to transfer a prisoner, the conspiratorial nature of the transfers render him liable.  Conspiracy claims must be pled with specificity.  "'Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.'"  Ciambriello v. County of Nassau, 292 F.3d

307, 325 (2d Cir. 2005) (quoting <u>Dwares v. City of New York</u>, 985 F.2d 94, 100 (1993)).  Penn's allegations are non-specific, claiming only that his transfers were engineered by "higher ups" and "the Vermont Dept. Of Corrections," and speculating that his transfer to Arizona was part of a coordinated effort to conceal the fact that he had been abused.  These sort of "unsupported, speculative, and conclusory" allegations are insufficient, and should be DISMISSED.  <u>Leon v. Murphy</u>, 988 F.2d 303, 311 (2d Cir. 1993).

Finally, Penn argues that the Department of Corrections is liable because of its contract with CCA. Again, this argument does not name Gold specifically, and even if it did, does not claim personal involvement in the alleged mistreatment such that he could be held liable under § 1983.  Penn's claims against Gold in an individual capacity should, therefore, be DISMISSED.

III.  <u>Venue</u>

The defendants argue that venue in Vermont is improper, and that because a transfer to Kentucky would result in an immediate dismissal, the case should be dismissed here.  Rule 12(b)(3) of the Federal Rules of

Civil Procedure and 28 U.S.C. §§ 1404(a), 1406(a) permit the Court to dismiss a claim where venue is improper. The defendants have filed their motion under 28 U.S.C. § 1406(a), which requires dismissal if venue is improper, or a transfer to the appropriate court if a transfer would serve "the interests of justice." 28 U.S.C. § 1406(a). For the reasons set forth below, I recommend that the remaining defendants not be dismissed, and that the case be transferred to the Eastern District of Kentucky.

The requirement of proper venue "serves the purpose of protecting a defendant from the inconvenience of having to defend an action in a trial that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred." Leon C. Baker, P.C. v. Bennett, 942 F.Supp. 171, 175 (S.D.N.Y. 1996). In cases involving questions of federal law, such as civil rights claims under § 1983, venue lies in

> (1) a judicial district where any defendant
> resides, if all defendants reside in the same
> state, (2) a judicial district in which a
> substantial part of the events or omissions
> giving rise to the claim occurred or a
> substantial part of property that is the subject

15

of the action is situated, or (3) a judicial
district in which any defendant may be found, if
there is no district in which the action may
otherwise be brought.

28 U.S.C. § 1391(b); see also Amaker v. Haponik, 198

F.R.D. 386, 391 (S.D.N.Y. 2000).  Subsection (1) of §

1391(b) does not apply here, since the original

defendants did not all reside in the same district.  If

Gold is excluded from this analysis, and all other

defendants, including CCA, reside in Kentucky, subsection

(1) would apply, and Kentucky would be the proper venue.

Assuming that subsection (1) of § 1391(b) does not

apply, subsection (2) determines venue based upon where

"a substantial part of the events or omissions giving

rise to the events occurred . . . ."  28 U.S.C. §

1391(b).  The Second Circuit has instructed lower courts

to "take seriously the adjective 'substantial'" in

construing "the venue statute strictly."  Gulf Ins. Co.

v. Glasbrenner, 417 F.3d 353, 356 (2d Cir. 2005).  In

this case, the principal allegations of misconduct center

on the correctional facility in Kentucky.  Although Penn

alleges a conspiracy with the Vermont Department of

Corrections, he concedes that "all of the events and

circumstances" giving rise to his cause of action

16

occurred while he was "in the custody and care of the CCA/Lee Adjustment Facility."   (Paper 3-6 at 2). Consequently, under subsection two of § 1391(b), the "substantial part of the events" took place in Kentucky, and venue is most appropriate there.   See Sadler v. Rowland, 2004 WL 2061127, at *5 (D. Conn. Sept. 13, 2004) (action brought by Connecticut prisoner against prison personnel in Virginia transferred to Virginia).   Because this action could have been brought in Kentucky, subsection (3) of § 1391(b) is inapplicable.   See Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3802.1 n. 26 (Supp. 2003) (citing F.S. Photo, Inc. v. Picturevision, Inc., 48 F. Supp. 2d 442, 448 (Del. D.C. 1999)).

Having determined that venue is most appropriate in Kentucky, the Court must decide whether the case should be dismissed, or whether the interests of justice call for a transfer.   The defendants contend that a transfer to Kentucky will result in dismissal on grounds of either failure to exhaust administrative remedies or statute of limitations.   If the defendants are correct, § 1406 requires dismissal.   28 U.S.C. § 1391(b) ("The district

17

court of a district in which is filed a case laying venue in the wrong division or district *shall dismiss*, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.") (emphasis added); In re Sorrells, 218 B.R. 580, 585 (B.A.P. 10th Cir. 1998) (district court has no discretion to retain a case in which venue is improper).

With respect to exhaustion of administrative remedies, the defendants argue that the law in the Sixth Circuit is significantly different from that of the Second Circuit.  In the Second Circuit, exhaustion of administrative remedies is an affirmative defense, defendants bear the burden of proof, and "prisoner plaintiffs need not plead exhaustion with particularity." McCoy v. Goord, 255 F. Supp. 2d 233, 247-48 (S.D.N.Y. 2003).  The circuit court has recently made clear that opportunities for exhaustion must be made available to the prisoner.  See Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004); see also Giano v. Goord, 380 F.3d 670 (2d Cir. 2004).  Dismissal is appropriate "where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to

18

use them and no special circumstances justified failure to exhaust." <u>Berry v. Kerik</u>, 366 F.3d 85, 87 (2d Cir. 2004).

In this case, Penn claims that he was at first denied a paper and pen, and was subsequently granted only limited access to the law library. He also asserts that he filed grievances, but received no response. Penn also complained to the prison warden, but was told that CCA did not have to observe his constitutional rights. Although the Court need not determine at this time whether such facts would save Penn's case from dismissal for lack of exhaustion, it is certain that, under the law of this circuit, the Court would be required to give Penn's claims careful consideration.

If this case is transferred to Kentucky, these claims would likely receive equally careful consideration. It is universally accepted that a prisoner is required to exhaust "all available" administrative remedies prior to filing suit. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001); <u>Boyd v. Corrections Corp. of America</u>, 380 F.3d 989, 994 (6th Cir. 2004). In the Eastern District of Kentucky, the District Court has

regularly cited Second Circuit precedent when addressing the issues of "availability" and "special circumstances," and has adopted the Second Circuit's test for analyzing the availability of prison administrative remedies. See Rayburn v. Sizemore, 2005 WL 1593947, at *3-*4 (E.D. Ky. July 6, 2005) (citing Hemphill v. State of New York, 380 F.3d 680, 686 (2d Cir. 2004)); Martin v. Sizemore, 2005 WL 1491210 at *1-*2 (E.D. Ky. June 22, 2005) (same); Baker v. Andes, 2005 WL 1140725, at *4 (E.D. Ky. May 12, 2005) (same). Therefore, if this case is transferred, it does not appear that legal differences in the circuits will result in lesser scrutiny by the transferee court. Consequently, and given Penn's allegations of obstruction and non-responsiveness, the Court cannot say with certainty that a transfer to Kentucky would result in dismissal based upon a lack of exhaustion.

The defendants also claim that a transfer to Kentucky would result in immediate dismissal on statute of limitations grounds. Kentucky has a one-year statute of limitations for personal injury actions, K.R.S. § 413.140, which is applicable to § 1983 claims. Cox v. Treadway, 75 F.3d 230, 240 (6th Cir. 1996); Collard v.

Kentucky Board of Nursing, 896 F.2d 179 (6th Cir. 1990);
Demery v. City of Youngstown, 818 F.2d 1257, 1261 (6th
Cir. 1987).  In Vermont, the statute of limitations for
personal injuries, and thus for § 1983 claims, is three
years.  12 V.S.A. § 512(4); Chin v. Bowen, 833 F.2d 21,
23-24 (2d Cir. 1987) (citing Wilson v. Garcia, 471 U.S.
261, 266-67 (1985)).  Penn's injuries occurred shortly
after his arrival in Kentucky in February, 2004.  He
submitted his complaint to this Court in November, 2005.
Therefore, his claim was filed outside of the Kentucky
limitation period, but within the period prescribed by
Vermont law.

The Supreme Court has held that when a party seeks
to transfer a case pursuant to § 1404, the transferor
forum's limitations period applies.  See Ferens v. John
Deere Co., 494 U.S. 516, 519-20 (1990).  When a transfer
is pursuant to § 1406, however, courts have generally
held that the law of the transferee court applies.  See
Levy v. Pyramid Co., 871 F.2d 9, 10 (2d Cir. 1989);
Stephens v. Norwalk Hospital, 162 F. Supp. 2d 36, 40-41
(D. Conn. 2001).  The defendants' motion in this case
argues improper venue under § 1406.

Nonetheless, this case may be a candidate for various forms of tolling.  First, the statute of limitations is tolled while a prisoner is exhausting his administrative remedies.  <u>Brown v. Morgan</u>, 209 F.3d 595, 596 (6th Cir. 2000).  Penn claims that when he tried to exhaust his administrative remedies, was at first denied writing materials, and ultimately received no response.  Penn also had unproductive communications with the prison warden.  If this case is transferred, the Kentucky court may choose to consider whether, and for how long, Penn is entitled to a tolling period for his efforts at administrative exhaustion.

Penn also claims that he tried to file this case while in Arizona.  (Paper 16-1 at 3).  In support of his claim, he refers to Exhibit A to the complaint.  This Court has received no such exhibit, and is consequently unable to review the merits of his claim.[2]  Nonetheless, if Penn did try to file an action within the applicable statute of limitations, and was denied this opportunity as a result of misconduct by CCA employees or others,

---

[2]  Penn is advised to re-file Exhibit A to the complaint as soon as possible.

22

this fact may contribute to a tolling argument.[3]

Under § 1406, this Court may either dismiss or transfer Penn's case.  Because it is not clear from the allegations in the complaint that Penn's claims are, as the defendants claim, a "sure loser," the Court should find that a transfer, rather than dismissal, will best serve the interest of justice in this case.  (Paper 9 at 16) (citation omitted).  I therefore recommend that the case be transferred to the United States District Court for the Eastern District of Kentucky.

Conclusion

For the reasons set forth above, I recommend that the defendants' motion to dismiss (Paper 9) be GRANTED in part and DENIED in part.  I recommend that the claims against defendant Gold be DISMISSED, and that the remainder of the case be transferred to the United States District Court for the Eastern District of Kentucky. Penn's motion for appointment of counsel (Paper 8) is DENIED as moot, subject to renewal in the appropriate

_____

[3] The Court also notes that if the case is transferred, the date on which Penn filed in Vermont will remain the effective filing date for statute of limitations purposes.  See Smith v. Peters, 482 F.2d 799 (6th Cir. 1973), cert. denied, 415 U.S. 989 (1974).

venue once the Court has ruled upon this Report and Recommendation.

Dated at Burlington, in the District of Vermont, this 30th day of May, 2006.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).